## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GENERAL MOTORS LLC, and GM GLOBAL TECHNOLOGY OPERATIONS LLC, | : : : : Case No. 2:15-cv-12917-GER- |
| Plaintiffs, | : EAS : |
| v. | : : |
| DORMAN PRODUCTS, INC. and ELECTRONICS REMANUFACTURING COMPANY, LLC, | : : : : : |
| Defendants. | : : |

## DEFENDANTS' PARTIAL MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Dorman Products, Inc. and Electronics Remanufacturing Company, LLC (collectively, "Dorman"), through their undersigned counsel, move to partially dismiss the Second Amended Complaint filed by Plaintiffs General Motors LLC and GM Global Technology Operations LLC (collectively, "GM") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the accompanying brief, Count I fails to state a claim upon which relief can be granted with respect to four of the five registered copyrighted works, and Count II fails to state a claim upon which relief can be granted. Those claims in the Second Amended Complaint should be dismissed.

1

In accordance with E.D. Mich. L.R. 7.1, counsel for Dorman sought concurrence from counsel for GM. Because concurrence was not forthcoming, Dorman was required to file this motion.

Respectfully submitted,

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**

By: /s/Todd A. Holleman
Todd A. Holleman (P57699)
Kimberly A. Berger (P56165)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
holleman@millercanfield.com
berger@millercanfield.com

and

**BLANK ROME LLP**
Grant S. Palmer
Daniel E. Rhynhart
Stephanie C. Chomentowski
One Logan Square, 130 N. 18th Street
Philadelphia PA 19103
Phone: (215) 569-5578
Fax: (215) 832-5578
palmer@blankrome.com
rhynhart@blankrome.com
chomentowski@blankrome.com
*Of Counsel*

*Attorneys for Dorman Products, Inc. and Electronics Remanufacturing Company, LLC*

Dated: November 7, 2016

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GENERAL MOTORS LLC, and GM GLOBAL TECHNOLOGY OPERATIONS LLC, | : : : : : | Case No. 2:15-cv-12917-GER-EAS |
| Plaintiffs, | : : |
| v. | : : |
| DORMAN PRODUCTS, INC. and ELECTRONICS REMANUFACTURING COMPANY, LLC, | : : : : : |
| Defendants. | : : |

## DEFENDANTS DORMAN PRODUCTS, INC. AND ELECTRONICS REMANUFACTURING COMPANY, LLC'S MEMORANDUM OF LAW <u>IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS</u>

1

# **TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF THE ISSUES PRESENTED ............................................1

II.   PRELIMINARY STATEMENT .......................................................................2

III.  BACKGROUND .............................................................................................4

      A.   Brief Procedural History ......................................................................4

      B.   Relevant Factual Allegations ...............................................................5

IV.   ARGUMENT..................................................................................................10

      A.   Legal Standard....................................................................................10

      B.   GM's Copyright Infringement Claim (Count I) Should Be
          Dismissed with Respect to Four of the Five Registrations. ...............11

      C.   GM's Illegal Circumvention Claim under the DMCA (Count II)
          Should Be Dismissed in its Entirety....................................................15

V.    CONCLUSION...............................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................9, 10, 11, 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................9, 10, 11, 14

*Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d
    607, 617 (E.D. Mich. 2012) .................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*,
    499 U.S. 340 (1991).............................................................................11

*Kohus v. Mariol*,
    328 F.3d 848 (6th Cir. 2003) ...............................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ...........................................................20, 21

**Statutes**

17 U.S.C. § 504.......................................................................................2, 15

17 U.S.C. § 1201................................................................................passim

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................10

# I.    STATEMENT OF THE ISSUES PRESENTED

*Issue #1*

Should the Court dismiss GM's claim for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* (Count I of the Second Amended Complaint), with respect to four of the five copyrights asserted, because GM has failed to allege ownership of a valid copyrighted work and copying of that work with respect to those four copyright registrations?

Suggested Answer: Yes.

*Issue #2*

Should the Court dismiss GM's claim for unlawful circumvention under the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A), (Count II of the Second Amended Complaint), because GM has failed to allege an act of circumvention of a technological measure that controls access to a copyrighted work?

Suggested Answer: Yes.

1

## II.    PRELIMINARY STATEMENT

GM has reasserted its claims under the Copyright Act and the Digital Millennium Copyright Act (the "DMCA") and added a new DMCA count and a new trade secrets count. Two of the counts are deficient as pled and should be dismissed. Dorman and ERC focus this partial motion to dismiss on Count I (Copyright Infringement) and Count II (Illegal Circumvention of Security Measures under the DMCA).

With respect to Count I (Copyright Infringement), GM has failed to sufficiently plead ownership and copying with respect to four of the five registered works cited in the Second Amended Complaint. GM has not alleged any connection between these four works and any control modules installed in GM's vehicles, and GM fails to allege copying with respect to the other four works as well.[1]

With respect to Count II (Illegal Circumvention of Security Measures under the DMCA), GM has failed to sufficiently plead that Dorman circumvented a technological measure that controls access to a copyrighted work. GM has not only failed to identify any technological measure that protects access to a copyrighted

---

[1] Limiting the scope of the copyright infringement claim to the '502 Work only is particularly important for discovery purposes and would serve to clarify the scope of potential damages, as copyright infringement damages can be calculated, in part, upon the number of works at issue. 17 U.S.C. § 504.

work (and not simply access to a control module), but GM has also failed to allege that Dorman circumvented that unidentified technological measure to obtain access to a copyrighted work.

For these reasons, and others, Dorman requests that the Court partially dismiss Count I (Copyright Infringement) as it relates to four of the five registered works and dismiss Count II (Illegal Circumvention of Security Measures under the DMCA) in its entirety.

## III.   BACKGROUND

### A.   Brief Procedural History

GM filed this lawsuit in August 2015 asserting claims of Copyright Infringement (Count I) and Unlawful Circumvention under the DMCA (Count II).[2] Dorman moved to dismiss GM's Amended Complaint, arguing that GM had not properly pled the elements of either of its claims. Dorman contended, with respect to Count I, that GM failed to allege any connection between its copyrighted works and the control modules installed on its vehicles, and, with respect to Count II, that GM failed to allege that Dorman circumvented a technological measure that protected access to a copyrighted work.

After the motion was fully briefed, the Court granted Dorman's motion. The Court held that GM failed to sufficiently plead a claim of copyright infringement on account of its failure to "forge any sort of connection between its list of six copyrighted works and the control modules installed in [GM's] vehicles."[3] The Court also held that GM failed to sufficiently plead a claim of unlawful circumvention because it failed to identify a technological measure that protected

---

[2] GM first filed its Complaint on August 17, 2015 and then filed an Amended Complaint the next day. (Doc. ##1, 5). For all purposes, the Amended Complaint was GM's initial or original pleading.

[3] Opinion and Order Granting in Part Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #17) ("Opinion"), pp. 11-12.

access to a copyright work. The Court gave GM an opportunity to attempt to cure these deficiencies by filing a second amended complaint.

In its Second Amended Complaint, GM expanded its claims to now assert four counts. The first two are the same as in the Amended Complaint: Copyright Infringement (Count I) and Unlawful Circumvention under the DMCA (Count II). GM added the second two:  Count III, Trafficking in Illegal Means for Circumvention of Security Measures under the DMCA, and Count IV, Misappropriation of Trade Secrets under the Michigan Trade Secret Act. This timely motion seeks to partially dismiss Count I (Copyright Infringement) as it relates to four of the five registered works and to dismiss Count II (Illegal Circumvention of Security Measures under the DMCA) in its entirety.

### B.    Relevant Factual Allegations[4]

GM begins the Second Amended Complaint by stating that it has "developed proprietary vehicle servicing software for its paying subscribers for diagnosing, servicing, and repairing GM vehicles."[5] Referring to this software as "a web-based system" called "TIS," GM claims its website allows "paying subscribers" to "download portions of the TIS software and other computer files to be loaded onto

---

[4] Dorman accepts GM's factual allegations as pled, as it must, only for purposes of this motion to dismiss.

[5] Second. Amend. Compl. ¶22.

and run on GM's vehicle control modules."[6] GM states that this "software and related software are sometime [sic] referred to as vehicle calibration or 'cal' files."[7] In order for service mechanics to obtain these files, they may subscribe to GM's website, obtain a password, pay a fee, and then be allowed to obtain "aftermarket updates to the software and other computer files that run on these control modules."[8]

GM claims that Dorman made "improper and unlawful use of one or both of GM's Websites to illicitly copy the [TIS] software from GM's servers to use for the unlawful purposes described [in the Second Amended Complaint.]"[9] GM further claims that Dorman obtained "blank" control modules and "programmed them with unlawful copies of GM's software."[10] GM itself describes the "blank" control modules as "modules that are not fully programmed" with GM's software.[11]

_____

[6] Second. Amend. Compl. ¶23.

[7] *Id.* ¶23.

[8] *Id.* ¶¶25-30.

[9] *Id.* ¶36.

[10] *Id.* ¶73.

[11] Second Amend. Compl. ¶12 and ¶47.

6

With that background, GM then alleges that it "has registered its copyrights in [the TIS software] as reflected in at least the following U.S. copyright registrations" as follows:

1. Techline Information Systems TIS 05 5 (TXu1-311-704);

2. Techline Information System TIS 11 35 2005 CD (TXu1-311-702);

3. Techline TIS v. 07.5 Application/Data 10 2007 (TX 6-956-845);

4. Techline Information Systems TIS 14.5 (TX 7-924-803); and

5. Techline Information System TIS NAO Vehicle Calibration Software 2014 (TXu 1-917-502)[12] (The first four of these registered works are hereinafter referred to, collectively, as the "Contested Works" and the fifth as the "'502 Work").

GM still does not allege how each of these five registered works relates to the various aspects of the TIS software. GM merely alleges in conclusory fashion that the five "registrations cover copyrighted works – namely, original software owned by GM – that is installed on control modules in GM vehicles."[13]

The only registered work that GM connects with a control module is the '502 Work, which GM alleged (albeit indirectly) is loaded onto the Transmission

---

[12] Second Amend. Compl. ¶31. As noted above, GM had alleged six registrations in its prior pleading. *See* Amend. Compl. ¶18.

[13] Second Amend. Compl. ¶33.

7

Electro-Hydraulic Control Module ("TEHCM") and/or the Transmission Control Module ("TCM").[14] GM allegedly purchased "a sample of a module sold by Dorman,"[15] tested it, and found that it "showed verbatim copying of original software covered by GM's registration number TXu 1-917-502," i.e., the '502 Work.[16]

With respect to the Contested Works, on the other hand, GM's allegations rely on generalities. GM asserts only the following as it relates to any purported copying of the Contested Works:

> This tested Dorman module is but one example. GM plausibly believes, based on inter alia this confirmed example in a tested Dorman module, Dorman's advertising and marketing statements touting its products, as well as GM's knowledge that Dorman's modules could only be immediately used after installation if GM's copyrighted software were loaded onto them, that Defendants' copying of GM's copyrighted software is extensive. Such copying includes, upon information and belief, direct copying of original software covered by at least these copyright registrations: TXu1-311-704 (Techline Information Systems TIS 05 5), TXu1-311-702 (Techline Information System TIS 11 35 2005 Data CD), TX 6-956-845 (Techline TIS v. 07.5 Application/Data 10 2007), TX 7-924-803 (Techline Information Systems TIS 14.5), TXu 1-917-502 (Techline Information System TIS

---

[14] Second Amend. Compl. ¶¶54, 63.

[15] *Id.* ¶42.

[16] *Id.* ¶44.

8

NAO Vehicle Calibration Software 2014).[17]
The only other information about the Contested Works must be inferred from general statements in a purported screenshot from Dorman's website stating: "TEHCM Units come pre-programmed" and offer a "[p]lug and play design."[18] From this, GM asserts that Dorman's products must be sold with "GM software," because "the modules would not operate without GM's software running on them."[19] The Court already found, however, that GM's interpretations of Dorman's website do "not raise a plausible inference that Defendants copied original elements of Plaintiffs' copyrighted works."[20]

Under *Iqbal* and *Twombly*, GM has failed to allege sufficient facts to raise a right to relief with respect to the Contested Works. GM does not allege which control modules are associated with the Contested Works (as compared to the '502 Work, which GM specifically alleges is installed on the TEHCM), and alleges nothing about any purported copying of the Contested Works. The Contested Works should be struck from the Second Amended Complaint, and Count I should be dismissed for failure to state a claim to the extent GM has asserted a claim of copyright infringement over the Contested Works.

---

[17] Second Amend. Compl. ¶48.

[18] *Id.* ¶¶37-40.

[19] *Id.* ¶40.

[20] Opinion, p. 13.

9

In addition, GM has failed to identify any technological measure that protects access to a copyrighted work (and not simply access to a control module) and also failed to plead that Dorman circumvented the unidentified technological measure to obtain access to a copyrighted work. Accordingly, under *Iqbal* and *Twombly*, Count II should be dismissed for failure to state a claim under Section 1201(a)(1)(A) of the DMCA.

## IV.    ARGUMENT

### A.    Legal Standard

Notice pleading under the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In *Iqbal*, the United States Supreme Court explained that dismissal under Rule 12(b)(6) is warranted where the complaint does not "allege 'sufficient factual matter' to show that a claim is facially plausible." *Iqbal*, 556 U.S. at 675. Under this standard, "[f]actual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Accordingly, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Rather, to be plausible on its

10

face, the pleading must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570.

To pass the *Iqbal/Twombly* standard on a copyright infringement claim, a claimant must plead "ownership of a valid copyright and copying of constituent elements of the work that are original." *Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 617 (E.D. Mich. 2012) (citing *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,* 499 U.S. 340, 361 (1991)); *see Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). GM has failed to so plead with respect to the Contested Works.

To pass the *Iqbal/Twombly* standard on a claim of illegal circumvention under Section 1201(a)(1)(A) of the DMCA, a claimant must plead that the defendant circumvented a technological measure that "effectively controls access to a work protected under" copyright law. 17 U.S.C. § 1201(a)(1)(A). Again, GM has failed to so plead here.

## B.    GM's Copyright Infringement Claim (Count I) Should Be Dismissed with Respect to Four of the Five Registrations.

GM's claim for copyright infringement (Count I) fails to sufficiently allege ownership and copying of the Contested Works.

As to **ownership**, the Court dismissed GM's Amended Complaint on account of a "fail[ure] to forge any sort of connection between its list of six

11

copyrighted works and the control modules installed in Plaintiffs' vehicles."[21] The Court explained that "Plaintiffs cannot satisfy their obligation to plead ownership of a valid copyright without specifying, at a minimum, which of their six copyrighted works are installed on control modules found in their vehicles."[22] This is important, as the Court explained, because "[o]therwise, a party could plead the first element of a claim of copyright infringement merely by citing to a laundry list of copyright registrations secured by this party, without any effort to identify which of the party's copyrighted works were involved in the defendant's allegedly infringing activities."[23]

The same deficiency is present in GM's Second Amended Complaint with respect to the Contested Works. Only the '502 Work has been alleged to be connected with a control module (the TEHCM or the TCM). The Second Amended Complaint, like the one that preceded it, simply contains no factual allegations as to what control modules might be associated with the Contested Works. GM merely alleges that all five "registrations cover copyrighted works – namely, original software owned by GM – that is installed on control modules in GM

---

[21] Opinion, p. 11.

[22] *Id.*, p. 11.

[23] *Id.*, pp. 11-12.

vehicles."[24] But that vague allegation simply parrots the language in the Court's Opinion on what it identified and explained to be deficient.

The only element of the Second Amended Complaint that connects the Contested Works to a control module with any specificity is paragraph 48, which contains threadbare allegations at best. In this lone paragraph, GM alleged the following:

> This tested Dorman module is but one example. GM plausibly believes, based on inter alia this confirmed example in a tested Dorman module, Dorman's advertising and marketing statements touting its products, as well as GM's knowledge that Dorman's modules could only be immediately used after installation if GM's copyrighted software were loaded onto them, that Defendants' copying of GM's copyrighted software is extensive. Such copying includes, upon information and belief, direct copying of original software covered by at least these copyright registrations: TXu1-311-704 (Techline Information Systems TIS 05 5), TXu1-311-702 (Techline Information System TIS 11 35 2005 Data CD), TX 6-956-845 (Techline TIS v. 07.5 Application/Data 10 2007), TX 7-924-803 (Techline Information Systems TIS 14.5), TXu 1-917-502 (Techline Information System TIS NAO Vehicle Calibration Software 2014).[25]

GM transparently states that it "plausibly believes" that Dorman has copied software covered by all five registrations.[26] But, what may be "plausibly believed"

---

[24] Second Amend. Compl. ¶33.

[25] *Id.* ¶48.

[26] *Id.*

is for the Court to assess under *Iqbal*/*Twombly* and is not a substitute for required factual allegations to sustain claims in a complaint.

As to the required element of ***copying***, a closer look at the support for GM's so-called "plausible belief" in paragraph 48 reveals it to be based entirely upon supposition. GM claims that the Contested Works have been copied simply because GM allegedly found copying of the '502 Work on the "tested Dorman module." GM does not allege that it tested any Dorman module that contained any of the Contested Works,[27] nor does it allege that Dorman advertises any sales of the Contested Works on its website. Rather, GM simply alleges that it "plausibly believes" and "upon information and belief" that Dorman is probably doing something similar with the Contested Works. This sort of allegation upon mere suspicion is precisely the sort of claim that fails under *Iqbal* and *Twombly*. Under an *Iqbal/Twombly* analysis, a plaintiff cannot just plead "a laundry list of copyright registrations," without ever providing more factual information as to ownership or copying.[28]

The remainder of GM's allegations to support its "plausible belief" of copying of the Contested Works is based only upon GM's interpretation of the

---

[27] Presumably, GM would know the control modules on which its software is purportedly loaded. That GM identified only one work on only one module further emphasizes how GM failed to do the same for the Contested Works.

[28] Opinion, p. 11.

language on the Dorman website. The Court already found, however, that GM's interpretations of Dorman's website do "not raise a plausible inference that Defendants copied original elements of Plaintiffs' copyrighted works."[29] And, even if they could be used, it does not lend to the conclusion that something has been copied by Dorman. With the Second Amended Complaint bare of any allegations of ownership or copying with respect to the Contested Works, GM cannot proceed on its copyright infringement claim for the Contested Works.

Limiting the scope of the copyright infringement claim to the '502 Work only is particularly important for discovery purposes and would serve to clarify the scope of potential damages, as copyright infringement damages can be calculated, in part, upon the number of works at issue. 17 U.S.C. §504. Because GM has provided no basis to proceed further with the Contested Works, its Copyright Infringement claim (Count I) should be dismissed to the extent it is based upon those works.

### C.    GM's Illegal Circumvention Claim under the DMCA (Count II) Should Be Dismissed in its Entirety.

In Count II of the Second Amended Complaint, GM alleges that Dorman violated Section 1201(a)(1)(A) of the Digital Millennium Copyright Act (the "DMCA"), which prohibits the "circumvent[ion] [of] a technological measure that

---

[29] Opinion, p. 13.

effectively controls access to a work protected under" federal copyright law.[30] GM's claims mirror allegations in the Amended Complaint, which this Court dismissed for failure to state a claim – specifically, for failure to identify a technological measure that protected access to a copyright work.[31] The Second Amended Complaint repeats the same broad claims of the Amended Complaint and, ultimately, fails for the same reasons.

In the Amended Complaint, GM stated that each of its vehicle control modules includes "a software-based lock to prevent unauthorized programming of the modules," thereby ensuring that "only authorized users can access the modules for programming and re-programming."[32] GM further alleged that Dorman circumvented GM's security measures to gain access to GM's control modules "in order to program them with unauthorized copies of" GM's software.[33]

This Court dismissed GM's allegations because "the plain language of the DMCA . . . prohibits the circumvention of technological measures that 'effectively control[] access to a work protected under' copyright law."[34] Notably, the DMCA does not protect access to <u>control modules</u> or prohibit the programming of <u>control</u>

---

[30] 17 U.S.C. § 1201(a)(1)(A).

[31] Opinion, pp. 16-19.

[32] Amend. Compl. ¶40.

[33] *Id.* ¶42.

[34] Opinion, p. 19 (*quoting* 17 U.S.C. § 1201(a)(1)(A)).

modules. Because GM failed in the Amended Complaint to allege an act of circumvention that enabled Dorman to obtain copies of GM's <u>copyrighted works</u>, this Court found that GM failed to state a claim under Section 1201(a)(1)(A) of the DMCA.[35] Put simply, GM failed to connect the alleged circumvention with the alleged access to <u>copyrighted works</u>.

In the Second Amended Complaint, GM has, again, failed to make this connection. By GM's own account, Dorman purportedly made "improper and unlawful use of one or both of GM's Websites to illicitly copy the software from GM's servers to use for the unlawful purposes described [in the Second Amended Complaint.]"[36] Following GM's narrative, Dorman then allegedly obtained "blank" control modules and "programmed them with unlawful copies of GM's software."[37] GM itself describes the "blank" control modules as "modules that are not fully programmed" with GM's software.[38] If all of this is true, where is the plausible connection between circumvention and access? There is none alleged.

The only technological protection measure described by GM exists on control modules. If, as GM alleges, Dorman programmed "blank" control modules,

---

[35] Opinion, pp. 18-19.

[36] Second Amend. Compl. ¶36.

[37] *Id.* ¶73.

[38] *Id.* ¶¶12 and 47.

then any access to the control modules, even by means of circumvention, would not be a violation of Section 1201(a)(1)(A) of the DMCA. After all, a technological protection measure on a "blank" control module does not protect access to a <u>copyrighted work</u> – it protects against, in GM's own words, the "unauthorized programming of" a control module.[39] As this Court has clarified, however, circumvention of a protection measure to gain access to a control module is not a violation of Section 1201(a)(1)(A) of the DMCA, which only prohibits the circumvention of a measure that controls access to a copyrighted work.[40]

In a hollow effort to ground its claim, GM contends that Dorman circumvented "a security measure and access[ed] the software contained on" a control module[41] and that Dorman "circumvent[ed a] software-based lock to gain access to software installed on [a] vehicle control module."[42] But these allegations, stated "[o]n information and belief,"[43] do not conform to GM's factual averments in the Second Amended Complaint. GM alleges only that Dorman has been

---

[39] Second Amend. Compl. ¶86.

[40] Opinion, pp. 16-19.

[41] Second Amend. Compl. ¶89.

[42] *Id.* ¶90.

[43] *Id.* ¶¶89 and 90.

programming "blank" control modules. GM claims that Dorman got the software from "one or both of GM's Websites,"[44] not from a control module.

Similarly, including scant allegations about Dorman's "Software Transfer Tool" in Count II does not remedy GM's deficient pleading on this count.[45]  GM makes allegations throughout the Second Amended Complaint about Dorman's "Software Transfer Tool," but these all relate to GM's Count III—trafficking in an anti-circumvention device, in violation of 17 U.S.C. §§ 1201(a)(2) and (b)(1)—and Dorman is not challenging Count III by this motion.  However, GM is improperly relying upon these same allegations to support its Count II, and this effort fails. The crux of GM's allegations about the Software Transfer Tool are about others' use of the tool to allegedly access GM's purported work.  For instance, GM alleged that Dorman's Software Transfer Tool was "designed and produced to enable Service Technicians to circumvent GM's technological protection measure to access the software contained on GM's vehicle control modules."[46]  But, this allegation says nothing about Dorman's conduct and instead purely speculates as to how others might be using the tool.  Quite simply, GM has alleged nothing about how Dorman has used the Software Transfer Tool to access purportedly protected

---

[44] Second Amend. Compl. ¶36.

[45] *Id.* ¶¶91 and 92.

[46] *Id.* ¶61 (emphasis added).

19

software. These allegations do not support the anti-circumvention claim in Count II.

GM's focus on aftermarket parts, and not copyrighted software, poignantly evokes the Sixth Circuit's warnings of misuse of the DMCA in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). In a concurring opinion,[47] the Sixth Circuit justifiably warned that the DMCA could "create monopolies" in the aftermarket and that "[a]utomobile manufacturers, for example, could control the entire market of replacement parts for their vehicles," cautioning as follows:

> If we were to adopt Lexmark's reading of the statute, manufacturers could potentially create monopolies for replacement parts simply by using similar, but more creative, lock-out codes. Automobile manufacturers, for example, could control the entire market of replacement parts for their vehicles by including lock-out chips. Congress did not intend to allow the DMCA to be used offensively in this manner, but rather only sought to reach those who circumvented protective measures "for

---

[47] Although this was a concurring opinion, the other two panel judges shared their concurring colleague's concerns. *See Lexmark Int'l, Inc.*, 387 F.3d at 553 ("[M]y colleagues and I agree on a number of points regarding this case. . . . We agree that the Digital Millennium Copyright Act (DMCA) was not intended by Congress to be used to create a monopoly in the secondary markets for parts or components of products that consumers have already purchased.") (Feikins, J., concurring in part and dissenting in part). In fact, the very rationale of requiring this element of proof was the concern that a larger manufacturer may "enforce its will against a smaller rival" by imposing upon it "the potential cost of extended litigation and discovery." *Id.* at 552.

> the purpose" of pirating works protected by the copyright
> statute. Unless a plaintiff can show that a defendant
> circumvented protective measures for such a purpose, its
> claim should not be allowed to go forward.

*Lexmark Int'l, Inc.*, 387 F.3d at 552-53 (Merritt, J., concurring) (emphasis added).

GM should not be permitted to abuse the DMCA to create monopolies in aftermarket parts. Without any connection between circumvention and access to copyrighted works, GM cannot proceed on its claims under Section 1201(a)(1)(A) of the DMCA. Count II, Illegal Circumvention of Security Measures under 17 U.S.C. § 1201, should be dismissed in its entirety.

## V.    CONCLUSION

For the foregoing reasons, Dorman respectfully requests that this Court partially dismiss with prejudice Count I (Copyright Infringement) as it relates to four of the five registered works, and dismiss in its entirety Count II (Illegal Circumvention of Security Measures under the DMCA).

Dated: November 7, 2016                    Respectfully submitted,

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**

s/Todd A. Holleman
Todd A. Holleman (P57699)
Kimberly A. Berger (P56165)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
holleman@millercanfield.com
berger@millercanfield.com
                                                      and

**BLANK ROME LLP**
Grant S. Palmer
Daniel E. Rhynhart
Stephanie C. Chomentowski
One Logan Square, 130 N. 18th Street
Philadelphia PA 19103
Phone: (215) 569-5578
Fax: (215) 832-5578
palmer@blankrome.com
rhynhart@blankrome.com
chomentowski@blankrome.com
*Of Counsel*

*Attorneys for Dorman Products, Inc. and Electronics Remanufacturing Company, LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record, as follows:

Emily J. Tait
HONIGMAN MILLER SCHWARTZ AND COHN LLP
39400 Woodward Ave., Ste. 101
Bloomfield Hills, MI 48304-5151
Tel. (248) 566-8300
etait@honigman.com

J. Michael Huget
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 South First Street, Fourth Floor
Ann Arbor, MI 48104
(734) 418-4254
mhuget@honigman.com
*Counsel for Plaintiff*

s/Todd A. Holleman
Todd A. Holleman (P57699)
Kimberly A. Berger (P56165)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
holleman@millercanfield.com
berger@millercanfield.com
