## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GENERAL MOTORS LLC, and GM GLOBAL TECHNOLOGY OPERATIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DORMAN PRODUCTS, INC. and ELECTRONICS REMANUFACTURING COMPANY, LLC, <br><br> Defendants. | Case No. 2:15-cv-12917-VAR-EAS <br> Hon. Victoria A. Roberts |

### DEFENDANTS DORMAN PRODUCTS, INC. AND ELECTRONICS REMANUFACTURING COMPANY, LLC'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Dorman Products, Inc. ("Dorman") and Electronics Remanufacturing Company, LLC ("ERC") (hereinafter "Dorman/ERC"), by and through counsel, Blank Rome LLP, hereby file their Answer to Plaintiffs General Motors LLC and GM Global Technology Operations LLC's (collectively, "GM") Second Amended Complaint with Affirmative Defenses and Counterclaim as follows:

### ANSWER

1.      Denied as stated. The allegations in this paragraph refer to the Second Amended Complaint, which is a writing that speaks for itself, and all characterizations thereof are denied.

1

2.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

3.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

4.    Admitted.

5.    Admitted.

6.    Denied as a legal conclusion to which no response is required.

7.    Denied as a legal conclusion to which no response is required.

8.    Denied as a legal conclusion to which no response is required.

9.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

10.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

11.    Admitted.

2

12.     Admitted in part; denied in part. It is admitted only that Dorman "has done and/or does business with ERC in this district." The remaining allegations are denied as either incorrect or disputed factual allegations, for which strict proof is demanded at trial, or conclusions of law, to which no response is required.

13.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

14.     Admitted in part; denied in part. It is admitted only that Dorman offers for sale a product that includes a "Software Transfer Tool." The remaining allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

15.     Denied. The allegations in this paragraph are denied as either incorrect or disputed factual allegations, for which strict proof is demanded at trial, or conclusions of law, to which no response is required.

16.     Admitted in part; denied in part. It is admitted only that Dorman offers the "Software Transfer Tool" for sale to its customers. The remaining allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial. To the extent the allegations in this paragraph refer to a writing, it speaks for itself, and all characterizations thereof are denied.

17.     Denied as a legal conclusion to which no response is required. To the

3

extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

18.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

19.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

20.    Admitted upon information and belief.

21.    Admitted in part; denied in part. It is admitted only that the Transmission Electro-Hydraulic Control Module or TEHCM is an electronic control module. The remaining allegations are denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

22.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

23.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

24.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

25.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

26.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

27.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

28.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

29.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

30.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

31.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

32.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

33.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

34.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

35.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

36.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

37.    Admitted in part; denied in part. It is admitted that "Dorman operates an internet web site www.dormanproducts.com." The remaining allegations are denied as either incorrect or disputed factual allegations, for which strict proof is demanded at trial, or conclusions of law, to which no response is required.

38.    Denied. The allegations in this paragraph references a writing that speaks for itself, and all characterizations thereof are denied. By way of further answer, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

39.    Denied. The allegations in this paragraph references a writing that speaks for itself, and all characterizations thereof are denied. By way of further

7

answer, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

40.    Denied. The allegations in this paragraph references a writing that speaks for itself, and all characterizations thereof are denied. By way of further answer, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

41.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

42.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

43.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

44.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and

strict proof thereof is demanded at time of trial.

45.     Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

46.     Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

47.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

48.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

49.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

50.     Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the

averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

51.     Admitted in part; denied in part. It is admitted only that GM sent Dorman a notification similar to that described; it is denied that the notification was factually or legally correct.

52.     Admitted in part; denied in part. It is admitted only that GM sent ERC a notification similar to that described; it is denied that the notification was factually or legally correct.

53.     Admitted in part; denied in part. It is admitted only that Dorman first offered for sale a product that includes a "Software Transfer Tool" in the summer of 2016. The remaining allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

54.     Admitted in part; denied in part. It is admitted only that Dorman's remanufactured TEHCMs and TCMs come with the "Software Transfer Tool." The remaining allegations are denied as characterizations of a writing that speaks for itself.

55.     Admitted in part; denied in part. It is admitted only that Dorman has ceased, or substantially reduced, its sales of refurbished, preprogrammed TEHCMs. The remaining allegations are denied as characterizations of a writing that speaks for itself.

56.     Denied. GM's lack of knowledge and speculation are denied as improper pleadings lacking any foundation. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

57.     Denied as stated. The allegations in this paragraph refer to a writing or video, which speak for themselves, and all characterizations thereof are denied. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

58.     Denied as stated. The allegations in this paragraph refer to a writing, which speaks for itself, and all characterizations thereof are denied. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

59.     Denied as stated. The allegations in this paragraph refer to a writing, which speaks for itself, and all characterizations thereof are denied. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

60.     Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

61.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

62.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

63.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

64.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

65.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

66.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

67.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

68.     Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. By way of further response, the allegations in this paragraph refer to a writing, which speaks for itself, and all characterizations thereof are denied.

### COUNT I – COPYRIGHT INFRINGEMENT

69.     Denied. No response is required to an incorporation paragraph. To the extent a response is required, Dorman/ERC incorporates by reference its responses in the preceding paragraphs as if set forth fully herein.

70.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

71.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

72.     Denied as a legal conclusion to which no response is required. To the

extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

73.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

74.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

75.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

76.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

77.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

78.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

79.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

80.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

81.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

82.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

83.    Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC request judgment in their favor and against General Motors LLC and GM Global Technology Operations LLC together with attorneys' fees, costs, interest and any further relief deemed appropriate by this Court.

## COUNT II – ILLEGAL CIRCUMVENTION
## OF SECURITY MEASURES UNDER 17 U.S.C. §1201

84.    Denied. No response is required to an incorporation paragraph. To the extent a response is required, Dorman/ERC incorporates by reference its responses in the preceding paragraphs as if set forth fully herein.

85.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

86.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

87.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

88.    Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial.

89.    Denied as conclusions of law to which no response is required. To the

extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

90.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

91.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

92.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

93.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

94.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

95.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC request judgment in their favor and against General Motors LLC and GM Global Technology Operations LLC together with attorneys' fees, costs, interest and any further relief deemed appropriate by this Court.

## COUNT III – TRAFFICKING IN ILLEGAL MEANS FOR CIRCUMVENTION OF SECURITY MEASURES UNDER 17 U.S.C. §1201

96.     Denied. No response is required to an incorporation paragraph. To the extent a response is required, Dorman/ERC incorporates by reference its responses in the preceding paragraphs as if set forth fully herein.

97.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

98.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

99.     Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

100.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

101.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

102.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

103.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

104.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

105.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

106.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC request judgment in their favor and against General Motors LLC

and GM Global Technology Operations LLC together with attorneys' fees, costs, interest and any further relief deemed appropriate by this Court.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE MICHIGAN UNIFORM TRADE SECRETS ACT

107.   Denied. No response is required to an incorporation paragraph. To the extent a response is required, Dorman/ERC incorporates by reference its responses in the preceding paragraphs as if set forth fully herein.

108.   Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term "trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

109.   Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term "trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

110.   Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the

averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term "trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

111. Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term "trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

112. Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term "trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

113. Denied. After reasonable investigation, Dorman/ERC is without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in this paragraph. Said averments are therefore denied and strict proof thereof is demanded at time of trial. To the extent the defined term

"trade secret" is meant in the legal sense of the word, this averment is denied as a conclusion of law to which no response is required.

114.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

115.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

116.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

117.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

118.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

119.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

120.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

121.   Denied as a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied as incorrect or disputed factual allegations, for which strict proof is demanded at trial.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC request judgment in their favor and against General Motors LLC and GM Global Technology Operations LLC together with attorneys' fees, costs, interest and any further relief deemed appropriate by this Court.

## AFFIRMATIVE DEFENSES

Dorman and ERC raise the following affirmative defenses to the allegations in GM's Second Amended Complaint:

1.   GM's Second Amended Complaint fails to state a claim upon which relief can be granted.

2.   One or more of the copyrights that GM alleges have been infringed are invalid for failure to comply with the requirements for copyrightable subject matter set forth in 17 U.S.C. § 102, including that no copyright protection is afforded to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained,

illustrated or embodied."

3.     GM's claims for copyright infringement are barred in whole or in part by the doctrine of copyright misuse.

4.     GM's claims for copyright infringement are barred in whole or in part because one or more of the copyright registrations in the Second Amended Complaint do not cover the vehicle control modules at issue in this case.

5.     One or more of GM's claims for statutory damages and attorneys' fees under 17 U.S.C. § 504 is barred because at least one, if not all, of GM's copyright registrations and pending applications do not meet the requirements of 17 U.S.C. § 412.

6.     GM's claims are barred in whole or in part because one or more of its registrations are invalid for including incomplete, inaccurate, false, or misleading information.

7.     Given the limited number of ways in which the works of authorship at issue can be expressed, GM's claims for copyright infringement are barred by the doctrines of merger and scènes-á-faire.

8.     Any reproduction, display, derivation, publication, or distribution of any valid copyrighted work of GM by Dorman or ERC is a fair use allowed by 17 U.S.C. § 107.

9.     Any reproduction, display, derivation, publication, or distribution of

any valid copyrighted work of GM by Dorman or ERC is protected by 17 U.S.C. § 109.

10.    Any reproduction, display, derivation, publication, or distribution of any valid copyrighted work of GM by Dorman or ERC is protected by 17 U.S.C. § 117.

11.    GM's claims under the DMCA, including 17 U.S.C. § 1201, are barred in whole or in part by 17 U.S.C. § 1201(c).

12.    Dorman's and ERC's actions fall within the reverse engineering exception of 17 U.S.C. § 1201(f).

13.    GM's claims under the DMCA, including 17 U.S.C. § 1201, are barred because the DMCA was not intended to regulate electronic control modules on automobiles or similar products and/or the regulation of such devices was beyond the powers granted to Congress under the Copyright Act.

14.    GM's claims are barred in whole or in part by equitable principles, including by the doctrines of laches, estoppel, unclean hands, waiver, and/or acquiescence.

15.    GM's claims are barred in whole or in part because GM is in breach of the Memorandum of Understanding and Right to Repair Agreement (R2R Agreement) dated January 14, 2014 and/or the Massachusetts Motor Vehicle Owners' Right to Repair Act.

16.    GM's claims are barred in whole or in part by GM's failure to identify any file, document, or other information constituting a trade secret or that is otherwise entitled to legal protection, under the Michigan Uniform Trade Secrets Act or otherwise.

17.    GM's claims are barred in whole or in part by GM's failure to establish or maintain procedures designed to prevent disclosure and/or misappropriation of its alleged trade secrets, including by motor vehicle owners.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC request judgment in their favor and against General Motors LLC and GM Global Technology Operations LLC together with attorneys' fees, costs, interest and any further relief deemed appropriate by this Court.

## COUNTERCLAIM

Defendants/Counterclaim Plaintiffs Dorman Products, Inc. ("Dorman") and Electronics Remanufacturing Company, LLC ("ERC") bring this Counterclaim against Plaintiffs/Counterclaim Defendants General Motors LLC and GM Global Technology Operations LLC (collectively, "GM") as follows:

## NATURE OF ACTION

1.    Dorman and ERC seek a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, that GM's use of its copyright registrations (should they even be valid) to control the aftermarket in vehicle

control modules and to force consumers to purchase a second copy of GM software for repairs to their vehicles constitutes copyright misuse, and, therefore, GM's copyright registrations may not be enforced.

## **PARTIES**

2.    Defendant/Counterclaim Plaintiff Dorman Products, Inc. is a Delaware corporation with a principal place of business located at 3400 Walnut Street, Colmar, Pennsylvania 18915.

3.    Defendant/Counterclaim Plaintiff Electronics Remanufacturing Company, LLC is a Delaware limited liability company with a principal place of business located at 2001 Dallavo Drive, Suite 101, Wallad Lake, Michigan 48390.

4.    Plaintiff/Counterclaim Defendant General Motors LLC is a Delaware liability company with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243.

5.    Plaintiff/Counterclaim Defendant GM Global Technology Operations LLC is a Delaware limited liability company with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243.

## **JURISDICTION**

6.    This Court has supplemental subject matter jurisdiction over this declaratory judgment claim pursuant to 28 U.S.C. §1367(a) because this counterclaim is so related to the federal claims set forth in GM's Second Amended

27

Complaint that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

## FACTUAL BACKGROUND

### A.    The Parties and the Aftermarket.

7.    GM is in the business of designing, manufacturing, marketing, and distributing automobiles throughout the world.

8.    Dorman and ERC are part of the independent automotive aftermarket industry (the "aftermarket"), which employs more than four million people in the United States and represents approximately 1.9 per cent of the U.S. gross domestic product.

9.    Dorman is a leading supplier of automotive and heavy duty truck replacement parts, automotive hardware, brake parts, and fasteners.

10.    For nearly one hundred years (since 1918), Dorman has been manufacturing and selling parts for all major makes and models of motor vehicles, including GM's, and creates quality products that compete with replacement products offered by original equipment manufacturers, like GM. Dorman's business, and the aftermarket generally, permit car owners to repair their vehicles and obtain replacement parts at reduced cost without going back to the original equipment manufacturer. Its competition in the motor vehicle industry is good for

consumers and healthy for the U.S. economy.

11.    It has long been part of American "do-it-yourself" culture that vehicle owners repair, replace parts, enhance and tinker with their motor vehicles, either in their own driveways or with their local, independent repair shops.

12.    Dorman has long served this do-it-yourself culture and these independent local businesses by selling new and remanufactured parts and hardware to retailers, vehicle owners, and independent mechanics.

13.    Lawmakers and the automotive industry in general have recognized the historic importance of each vehicle owner's ability to repair his or her own vehicle, through "right to repair" laws.[1]

14.    For decades, Dorman, ERC, and others in the aftermarket for parts and services have co-existed alongside GM and other major manufacturers.

15.    Until recently, that is, when GM began taking aggressive steps to use software, and its alleged copyrights, to control all parts and services of its vehicles, in order to eliminate the aftermarket, including Dorman, ERC, and many others.

16.    GM takes this step out of greed, to maximize its own profits, and with

---

[1] In one example, in the most recent triennial rule-making under the DMCA, the Librarian of Congress, on the recommendation of the Register of Copyrights, expressly exempted certain repair and modification of the programs on vehicle control modules from the DMCA's anti-circumvention provisions, stating that "owners of vehicles … are adversely impacted as a result of [technological protection measures] that protect the copyrighted computer programs on the [control modules] that control the functioning of their vehicles."

the goal of eliminating its competitors and a vibrant segment of the American economy.

### B.    The History of Control Modules.

17.    When GM and others started manufacturing vehicles in the early twentieth century, the vehicles were comprised of hardware components—and did not contain software.

18.    As technologies progressed, manufacturers started incorporating software into vehicles and vehicle parts. One early example was the engine control module, which included software that operated the module, and, consequently, the vehicle.

19.    Over the years, manufacturers dramatically expanded the use of software in vehicles. Most new vehicles today contain approximately 70 or more control modules incorporating software—ranging from those that control the engine to those that control power windows.

20.    Each control module in a vehicle consists of both hardware and software—both of which are necessary in order for today's vehicles to function properly.

21.    Differentiating between the hardware and software on a vehicle is generally immaterial to a driver when it comes to day-to-day driving—until the vehicle requires repair or servicing.

30

22.    Historically, when a GM vehicle needed to be serviced or repaired, vehicle owners have been able to choose from a number of options, including taking the vehicle to a GM dealership to be serviced, taking the vehicle to an independent mechanic to be serviced, or fixing the vehicle themselves.

23.    However, GM has intentionally foreclosed certain options that had previously been available to today's vehicle owners—all in an effort to control what Dorman, ERC, and others are able to develop and supply in terms of new and remanufactured replacement parts for GM vehicles. GM has interfered with these innovative efforts through the restrictions GM has placed on access to vehicle owners' copies of their software, GM's licensing practices with respect to its software, and aggressive "copyright enforcement" litigation, like this case, designed to eliminate its aftermarket competitors.

### C.    GM's Attempted Restrictions on Vehicle Owners.

24.    When a consumer purchases a GM vehicle from a GM dealership, the consumer purchases the entire vehicle, including all of its hardware *and the copies of the software installed on the vehicle's control modules*. Upon information and belief, there are no licensing agreements between GM and the vehicle purchaser.

25.    Despite the fact that vehicle owners own the copies of the software installed on their vehicles, GM has purportedly utilized technological protection measures to completely prohibit a vehicle owner from being able to access that

copy of the software (as alleged in Count II of the Second Amended Complaint). These technological protection measures interfere with vehicle owners' property rights—including their rights to sell, display, and otherwise dispose of the copies of the software that they own, as they are permitted to do under the first sale doctrine provided for in Section 109 of the Copyright Act.

26.    Because GM restricts access to the copies of software installed on its vehicles, owners of GM vehicles are unable to service those vehicles themselves and are forced to purchase a new, additional copy of the software, either directly or indirectly, from GM.

27.    According to GM's allegations, no individuals are permitted to access the software on any control module—even by a vehicle's owner—under the DMCA. This means that owners of GM vehicles are at risk of being sued by GM for merely accessing the copies of the software that they purchased from GM.

28.    This is a dramatic change from a prior GM practice that permitted vehicle owners to freely transfer their copies of the software from a broken control module to a replacement module, via the portable Programmable Read Only Memory (PROM) on that control module.

29.    In sum, GM has made it impossible for a vehicle owner to transfer the copy of the software that she already owns to a replacement control module.

30.    Dorman, ERC, and others have attempted to innovate new

technologies (including developing software transfer tools) that allow vehicle owners to enjoy their rights to the copies of the software that they own, as permitted under Section 109 of the Copyright Act. GM has stifled such innovations in order to force a vehicle owner to turn only to a GM dealership or GM-licensed mechanic to repair or service the vehicle.

### D.    GM's Attempted Restrictions on the Aftermarket.

31.    Without the ability to access the software on any control module, a vehicle owner must purchase a new copy of the software in order to repair the vehicle. In order to obtain a new copy of the software, the vehicle owner must go to a GM dealership or to an authorized GM mechanic (who pays licensing fees to GM). A vehicle owner cannot go to a mechanic fully independent from GM. In effect, if all sales and transfers of GM's software, including those permitted under Section 109 of the Copyright Act, require GM's prior authorization, then **all repairs to a control module require the consumer to purchase *a new and redundant copy* of the software from GM.**

32.    GM has designed its software licensing program for mechanics so that it is prohibitively expensive for independent mechanics to participate. First, simply repairing a control module requires a mechanic to make a substantial technological investment, including the purchase of a particular GM-approved programming tool and a specialized computer that meets GM's required specifications, as well as

33

training and instruction in GM's software and programming requirements. Second, the mechanic has no other choice but enter into a licensing agreement with GM and pay exorbitant licensing fees to GM merely to access GM's software—which (again) vehicle owners already own—and pass on this additional (and unnecessary) licensing cost to its customers. This has the intended effect of restricting access to GM software to only those mechanics that service a high volume of GM vehicles. Others that cannot afford the same access cannot effectively compete in the aftermarket.

33.    Pricing, however, is not the only anti-competitive element of GM's licensing model. The terms of GM's licensing agreements require that all services be performed on a vehicle at the mechanic's service facility (with limited exceptions for mobile mechanics) and that GM's software not be used to program control modules on behalf of third-party service facilities.

34.    By requiring all services to be performed by only the licensed mechanic, GM has precluded third parties from being able to supply hardware or software services to those mechanics. That is, GM explicitly prohibits mechanics from working with third party vendors (like Dorman or ERC), including third party vendors who could otherwise achieve the volumes required to make GM's annual licensing fees economically viable. Indeed, GM has refused to make any licensing terms available to Dorman or ERC.

35.    Further, by requiring that all services be performed on-vehicle, vehicle owners must purchase their software-based services from the same mechanics who perform their hardware-based services. Vehicles, after all, do not properly function when new hardware is installed without the associated software, so (under GM's licensing terms and without access to third party GM-licensed programmers) a vehicle owner cannot have the hardware repaired by one mechanic and the software installed by another. The result is as GM intended: GM has tied purchases of hardware for control modules to purchases of software for control modules, which (in light of the licensing model described above) means that vehicle owners must satisfy their hardware-based and software-based needs at GM dealerships or GM-licensed mechanics, even though they already own copies of the relevant software.

### E.    Impact of GM's Copyright Misuse.

36.    GM's attempts to enforce its copyrights are intended to increase GM's share of the aftermarket in hardware and software for GM vehicles. By restricting vehicle owners' access to their own copies of software installed on their GM vehicles, through litigation and purported technological protection measures, owners of GM vehicles cannot repair their vehicles without going to either a GM dealership or a GM-licensed mechanic.

37.    Further, through restrictive license agreements with unreasonable and

onerous terms (and litigation like this), GM has prevented the aftermarket from being able to innovate new technologies that allow vehicle owners to enjoy their rights to the copies of the software that they own and, ultimately, stifled competition in the aftermarket for control modules for GM vehicles.

38.    Vehicle owners are forced to purchase new—and, therefore, redundant—copies of that software when the control modules in their vehicles break; otherwise, they are at risk of being sued by GM for violating the DMCA.

39.    And because GM licensing terms mandate that hardware-based services and software-based services be performed together, at the same time by the licensed mechanic, GM effectively has controlled the aftermarket for hardware as well as software, all through its misuse of copyrights.

## COUNT ONE: DECLARATORY JUDGMENT COPYRIGHT MISUSE

40.    Dorman and ERC incorporate by reference the preceding paragraphs of this Counterclaim as if stated in full herein.

41.    GM's conduct is an attempt to illegally extend the monopoly granted to it by the Copyright Office and constitutes copyright misuse.

42.    In addition, GM has violated the public policies underlying the copyright laws by attempting to control the sales of aftermarket parts through its copyright registrations—which also constitutes copyright misuse.

43.    GM has sought to decrease competition in the market of replacement

36

control modules by attempting to leverage its copyright registrations to control this area of the aftermarket, which is outside its limited monopoly granted by copyright.

44.    The parties have a real, substantial, justiciable controversy for which a declaration will be useful in clarifying and settling the dispute relating to the legal relations between the parties—namely the scope of GM's copyright registrations, to the extent they are valid and enforceable.

45.    Accordingly, a declaratory judgment is appropriate here, under the Declaratory Judgment Act, 28 U.S.C. §2201, that GM's use of its copyright registrations (should they even be valid) to control the aftermarket in vehicle control modules and to force consumers to purchase a second copy of GM software for repairs to their vehicles constitutes copyright misuse, and, therefore, GM's copyright registrations may not be enforced.

46.    The dispute between the parties is definite and concrete, and a declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

WHEREFORE, Dorman Products, Inc. and Electronics Remanufacturing Company, LLC requests judgment in their favor and against General Motors LLC and GM Global Technology Operations LLC and hereby requests that this Court enter an Order: (a) declaring that GM's efforts to enforce copyright registrations in

any purported software for control modules in order to stifle innovation and restrict the sale and marketing of aftermarket parts and tools constitutes copyright misuse and enjoining GM from any further such efforts; (b) for Dorman and ERC's attorneys' fees and costs; and (c) for all such other relief as the Court may deem just and proper.

Dated: March 22, 2017         Respectfully submitted,

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**

By: /s/Todd A. Holleman
Todd A. Holleman (P57699)
Kimberly A. Berger (P56165)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
holleman@millercanfield.com
berger@millercanfield.com

                    and

**BLANK ROME LLP**
Grant S. Palmer
Daniel E. Rhynhart
Stephanie C. Chomentowski
One Logan Square, 130 N. 18th Street
Philadelphia PA 19103
Phone: (215) 569-5578
palmer@blankrome.com
rhynhart@blankrome.com
chomentowski@blankrome.com

*Attorneys for Dorman Products, Inc. and Electronics Remanufacturing Company, LLC*

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2017, I electronically filed the foregoing

with the Clerk of the Court using the ECF system, which will send notification of

such filing to counsel of record, as follows:

Emily J. Tait
HONIGMAN MILLER SCHWARTZ AND COHN LLP
39400 Woodward Ave., Ste. 101
Bloomfield Hills, MI 48304-5151
Tel. (248) 566-8300
etait@honigman.com

J. Michael Huget
HONIGMAN MILLER SCHWARTZ AND COHN LLP
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
(734) 418-4254
mhuget@honigman.com
*Counsel for Plaintiff*

/s/Todd A. Holleman
Todd A. Holleman (P57699)
Kimberly A. Berger (P56165)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
holleman@millercanfield.com
berger@millercanfield.com

1